[No. 14704.   Department Two.   November 20, 1918.]

THE STATE OF WASHINGTON, *Appellant,* v.
ISAAC BELKNAP, *Respondent.*[1]

FISH (5)—STATUTORY PROVISIONS — POSSESSION DURING CLOSED SEASON. Laws of 1917, p. 799, § 16, making it unlawful to possess or deal in salmon during the closed season cannot be sustained as a valid exercise of the police power for the protection of salmon, in view of the proviso to the act providing that the act shall not apply to salmon taken beyond the three-mile limit outside the straits of Juan de Fuca; since the proviso defeats the purpose which is the one justification of such legislation.

Appeal from a judgment of the superior court for Pacific county, Hewen, J., entered September 14, 1917, upon sustaining a demurrer to the information, dismissing a prosecution for violation of the fishing laws. Affirmed.

*L. L. Thompson, Attorney General, W. V. Tanner,* and *John I. O'Phelan,* for appellant.

*Welsh & Welsh,* for respondent.

MACKINTOSH, J.—By information, the defendant was charged with having in his possession for the purpose of sale, on the 27th day of August, 1917, salmon fish which he had caught beyond the three-mile limit outside of the Columbia river.   This prosecution was instituted under § 65, chapter 31 of the Laws of 1915, p. 67, as amended in § 16, chapter 169 of the Laws of 1917, p. 799, which section reads as follows:

"It shall be unlawful for any person, firm or corporation to purchase, handle, deal in or have in his

[1]Reported in 176 Pac. 5.

possession except for the sole use of himself and family any food fish of any variety which were taken from the waters of this state during any of the closed seasons prescribed in this act, and any person who purchases, handles, deals in or has in his possession any such fish during such periods, except for the sole use of himself and family, shall be guilty of a misdemeanor. And it shall be unlawful for any person, firm or corporation to purchase, handle, deal in, or have in his possession, except for the sole use of himself and family any salmon fish of any variety which were taken beyond the three mile limit outside of the Columbia river, during any of the closed seasons prescribed in this act; *Provided, however,* that this provision shall not apply to salmon taken beyond the three mile limit outside the Straits of Juan de Fuca.''

A demurrer, which was sustained, was interposed to the information; the grounds of the demurrer being that the section quoted is unconstitutional, in that it was an unlawful interference with interstate and foreign commerce and deprived the defendant of his property without due process of law, by prohibiting the dealing in salmon fish during the closed season, although the defendant had come into lawful possession of such fish outside of the jurisdiction of this state.

Upon the question presented here, there is a sharp and radical difference in the decisions of the various courts which have considered it. There are two distinct lines of authority, one represented by some decisions of the state courts and of the Federal courts in different districts of the United States, the other line of authority represented by the decisions of the courts of England, a few of the state courts and Federal courts of different districts, and by the decisions of the supreme court of the United States. The first line of authorities holds that the legislature of the

state has no power to punish one for the possession
of fish or game which was lawfully captured or killed;
that it, having become his lawful private property,
cannot be confiscated nor can he be punished for hav-
ing it in his possession for any purpose, any more
than any other lawful property can be confiscated or
subject the owner to punishment by reason of its pos-
session; that, when the possession was taken, it being
lawful, that possession cannot thereafter become un-
lawful by lapse of time. The other line of authorities
sustains acts such as the one under examination, upon
the theory that they are proper exercises of the police
power of the state, passed for the purpose of aiding
in the protection of the fish and game of the state.
This doctrine is most clearly stated in, and supported
by, the decision of the United States supreme court
in the case of *Silz v. Hesterberg,* 211 U. S. 31. It is
unnecessary to review the conflicting decisions of dif-
ferent jurisdictions, but it is sufficient to say that we
are impressed with, and in a proper case would be in-
clined to follow, the decision just referred to. In that
case the supreme court held that the act, which was
similar to the section before us, exclusive of the pro-
viso, was not void within the meaning of the 14th
amendment because it did not deprive the possessor
of property without due process of law; "the acts
in question were passed in the exercise of the police
power of the state with a clear view to protect the
game supply for the use of the inhabitants of the
state." The court then passed to the consideration of
the question of whether the act in question was an un-
reasonable and arbitrary exercise of that power and
said, at page 40:

"It is contended, in this connection, that the pro-
tection of the game of the state does not require that

a penalty be imposed for the possession out of season of imported game of the kind held by relator. It is insisted that a method of inspection can be established which will distinguish the imported game from that of the domestic variety, and prevent confusion in its handling and selling. That such game can be distinguished from domestic game has been disclosed in the record in this case, and it may be that such inspection laws would be all that would be required for the protection of domestic game. But, subject to constitutional limitations, the legislature of the state is authorized to pass measures for the protection of the people of the state in the exercise of the police power, and is itself the judge of the necessity or expediency of the means adopted. In order to protect local game during the closed season it has been found expedient to make possession of all such game during that time, whether taken within or without the state, a misdemeanor. . . . It has been provided that the possession of certain kinds of game during the closed season shall be prohibited, owing to the possibility that dealers in game may sell birds of the domestic kind under the claim that they were taken in another state or county. The object of such laws is not to affect the legality of the taking of game in other states, but to protect the local game in the interest of the food supply of the people of the state. We cannot say that such purpose, frequently recognized and acted upon, is an abuse of the police power of the state, and as such to be declared void because contrary to the Fourteenth Amendment of the Constitution.''

On the question of whether the act was an unlawful attempt to regulate foreign or interstate commerce, the court held:

''That a state may not pass laws directly regulating foreign or interstate commerce has frequently been held in the decisions of this court. But while this is true, it has also been held in repeated instances that laws passed by the states in the exertion of their police power, not in conflict with laws of Congress

upon the same subject, and indirectly or remotely affecting interstate commerce, are nevertheless valid laws.''

The foundation for the decision of this case is the same as that which underlies all the decisions which support the constitutionality of these acts; and that is, that, in order to protect local game and fish during the closed season, it is *expedient* to make it unlawful to possess such game or fish during such times, although such game or fish were originally lawfully taken, either within or without the state, ''owing to the likelihood of fraud or deceit in the handling of such game;'' and that this *expediency* extends to denying the right to possess game or fish from without the borders of the state, though it may be readily distinguished from the game or fish of the state which is sought to be protected, for the reason that the officials executing the law are to be relieved of the necessity of making even the casual inspection necessary to identify the game or fish held for sale.

But an examination of the section of our act discloses that the legislature has in the section itself nullified the reason which these courts have assigned as the only basis for sustaining the legislation attempted in the main part of this section; for the legislature has added a proviso which reads: ''that this provision shall not apply to salmon taken three miles outside of the straits of Juan de Fuca.'' By adding this provision, the act renders it possible to defeat the very purpose which the United States supreme court in the *Silz* case has declared to be the one justification of such legislation, namely, to protect the local game and fish. To prevent the possibility of salmon fish being caught unlawfully within this state and, when offered on the market, for their possessor to

claim that they were lawfully in his possession because taken without the three-mile limit outside of the Columbia river, the courts have sustained the exercise of the police power attempted in the main portion of the section; but the proviso makes it possible for this very fraud to be perpetrated by allowing the possessor of fish unlawfully taken within the state to offer them on the market under the claim that they were lawfully in his possession because taken beyond the three-mile limit outside the Straits of Juan de Fuca. If the main portion of this section could be sustained, it could only be so as tending to aid in the protection of fish and game in this state; the proviso defeats that end.

*Cessante ratione legis cessat et ipsa lex.*

The judgment is affirmed and the case dismissed.

MAIN, C. J., MOUNT, HOLCOMB, and CHADWICK, JJ., concur.

ON REHEARING.

[*En Banc.*   July 7, 1919.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court still adhere to the decision filed herein, and for reasons therein stated, the judgment is affirmed.